Matter of Ringelberg v John Mills Elec., Inc. (2021 NY Slip Op 04066)





Matter of Ringelberg v John Mills Elec., Inc.


2021 NY Slip Op 04066


Decided on June 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 24, 2021

529918
[*1]In the Matter of the Claim of Norman Ringelberg, Appellant,
v
John Mills Electric, Inc., et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:June 1, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Trevett Cristo PC, Rochester (Eric M. Dolan of counsel), for appellant.
Hamberger & Weiss LLP, Rochester (Stephen P. Wyder Jr. of counsel), for John Mills Electric, Inc. and another, respondents.



Pritzker, J.
Appeal from a decision of the Workers' Compensation Board, filed October 24, 2018, which ruled, among other things, that claimant violated Workers' Compensation Law § 114-a and disqualified him from receiving future indemnity benefits.
Claimant suffered work-related injuries to his back, groin and neck in August 2008, and his claim for workers' compensation benefits was established. At a hearing held in December 2017, the employer's workers' compensation carrier disclosed that it had carried out surveillance on claimant and raised the issue as to whether claimant had violated Workers' Compensation Law § 114-a. Following subsequent hearings, a Workers' Compensation Law Judge found that claimant violated Workers' Compensation Law § 114-a and assessed the mandatory penalty of forfeiture of benefits for the period between October 5, 2017 and April 10, 2018. Upon administrative review, the Workers' Compensation Board modified that determination so as to include the discretionary penalty of disqualifying claimant from receiving future benefits. Claimant appeals.
We affirm. "Workers' Compensation Law § 114-a (1) provides that a claimant who, for the purpose of obtaining disability compensation, or to influence any determination related to the payment thereof, 'knowingly makes a false statement or representation as to a material fact . . . shall be disqualified from receiving any compensation directly attributable to such false statement or representation'" (Matter of Galeano v International Shoppes, 171 AD3d 1416, 1417-1418 [2019]; accord Matter of Sidiropoulos v Nassau Intercounty Express, 178 AD3d 1266, 1267 [2019]). "Notably, feigning the extent of a disability or exaggerating symptoms and/or injuries have been found to constitute material false representations within the meaning of the statute" (Matter of Peck v Donaldson Org., 191 AD3d 1078, 1079 [2021] [citations omitted]; see Matter of Rosario v Consolidated Edison Co. of N.Y. Inc., 174 AD3d 1186, 1187 [2019]). "Whether a claimant has violated Workers' Compensation Law § 114-a is within the province of the Board, which is the sole arbiter of witness credibility, and its decision will not be disturbed if supported by substantial evidence" (Matter of Vazquez v Skuffy Auto Body Shop, 168 AD3d 1240, 1241 [2019] [internal quotation marks and citations omitted]; accord Matter of Felicello v Marlboro Cent. Sch. Dist., 178 AD3d 1252, 1253 [2019]).
In a June 2017 medical report, Walter Levy, a neurosurgeon who examined claimant on behalf of the carrier, found a 75% temporary partial disability, noting that claimant could do part-time sedentary work with a 10-pound lifting limit. Levy reported that claimant declined to do the toe, heel and tandem walking test and to get onto the examination table. Levy also observed that claimant used a cane and walked stooped over, with a slow deliberate pace and form. Levy performed another examination of claimant on October 5, 2017. Again, Levy noted that [*2]claimant declined the toe, heel and tandem walking test and to get onto the examination table. Levy further reported that claimant walked stooped over, with a slow, deliberate gait while using a cane, observing that claimant appeared less mobile and slower compared to the June 2017 examination. As the result of what Levy characterized as claimant's worsening condition, he opined that claimant had a temporary total disability.
Surveillance video taken on the day of Levy's medical examination in October 2017 shows him walking into and coming out of a doctor's office much as Levy had reported, stooped over and walking very slowly, using a cane and wearing a back brace. Claimant also appears to struggle getting into the passenger seat of an automobile. Approximately 45 minutes after leaving the doctor's office, claimant is shown in the video in the parking lot of a store. Claimant is depicted walking in an upright position at a normal pace, without the use of a cane and not wearing a back brace. Claimant is also depicted pushing a shopping cart and getting into the driver's seat of another automobile without difficulty and driving away. Surveillance video was also taken on a day in December 2017 that claimant attended a Board hearing. That video depicts claimant walking normally without a cane and getting into a vehicle without difficulty in the hours prior to the hearing. Claimant is shown later that day walking from the parking lot into the Board's office, using a cane and walking much slower and in a more deliberate pace than he had that day. Claimant is also depicted on other days walking normally and getting in and out of an automobile without difficulty. After reviewing the video surveillance footage, Levy issued an addendum to his October 2017 report, changing his opinion from temporary total disability to a mild to moderate temporary partial disability.
In response to the surveillance videos, claimant testified that his condition fluctuates and that the reason that his condition improved in the 45 minutes after the visit to the doctor's office in October 2017 was because he took two pain pills when he left the office and he was able to lay down in the car during the ride to the store. Although Levy later testified that claimant's condition could fluctuate from time to time during a day and that pain medication can affect his symptoms, he further testified that the degree of fluctuation reflected in the surveillance videos was "not medically consistent" with his diagnosed condition and treatment thereof. In light of the foregoing, the Board's finding that claimant knowingly made a material misrepresentation in violation of Workers' Compensation Law § 114-a is supported by substantial evidence and will not be disturbed (see Matter of Peck v Donaldson Org., 191 AD3d at 1081; Matter of Ledney v Boat-N-RV Warehouse, 174 AD3d 1245, 1246 [2019]). Moreover, given the Board's conclusion that claimant's embellishment of his condition to [*3]the medical examiner was egregious, a finding that is supported by the surveillance footage, we cannot conclude that the imposition of the discretionary penalty of permanent disqualification from future wage replacement benefits is disproportionate to claimant's material misrepresentations (see Matter of Losurdo v Asbestos Free, 1 NY3d 258, 267 [2003]; Matter of Poupore v Clinton County Hwy. Dept., 138 AD3d 1321, 1324 [2016]).
Egan Jr., J.P., Lynch, Clark and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.